# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

BENJAMIN ERNST,          §
                      §

         Plaintiff,       §       Civil Action No. 5:12-cv-01134-FB
                      §

     vs.                   §
                      §

WELLS FARGO BANK, N.A.,     §
                      §

         Defendant.     §

## DECLARATION OF MICHEL DOLAN IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS OR TRANSFER

I, Michael Dolan, hereby declare as follows:

1.     I am employed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and am employed as a Research and Mediation Manager. I am authorized to make this Declaration on its behalf. I make this Declaration in support of Wells Fargo's Motion to Dismiss or Transfer.

2.     In my capacity with Wells Fargo, I am personally familiar with the systems of records maintained by Wells Fargo. My familiarity with these systems arises from my personal use of each. Wells Fargo maintains a computerized system of records which allows a user to access electronic data stored by Wells Fargo in an electronic database pertaining to customer accounts. Wells Fargo also maintains a system of records that allows a user to access a database of electronically-scanned records pertaining to a customer's account and includes accounts related to mortgage loans.

3.     I have personally reviewed Wells Fargo's electronic systems of records pertaining to Plaintiff Benjamin Ernst's ("Plaintiff") mortgage loan account for the property located at 66 Garden Avenue, Chatham, New Jersey 07982-2258. I have located the mortgage loan application that Plaintiff signed, and which was subsequently assigned to Wells Fargo. A true and correct copy of that application is attached hereto as Exhibit "A."

4.     By reviewing the mortgage loan application signed by Plaintiff, I can confirm that the application was signed in the County of Monmouth, in the State of New Jersey, on June 14, 2007.  This fact is made known to me by the presence of Plaintiff's notarized signature on the application, and the affixed seal of Keith Noel Patruskey, a Notary Public of New Jersey.

5.     Based on my review of Wells Fargo's records, I can also confirm that Wells Fargo is currently the Plaintiff in an action filed in New Jersey Superior Court, Morris County, to foreclose on the property located at 66 Garden Avenue, Chatham, New Jersey 07928-2258.  A true and correct copy of the Complaint in that case, as well as the Order substituting Wells Fargo as Plaintiff, are attached hereto as Exhibit "B."

6.     Based on my review of the records pertaining to Plaintiff's account, I can confirm that the most current address that Wells Fargo has on file for Plaintiff is as follows: 7505 Davian Drive, Annandale, Fairfax County, Virginia 22003-5448.

7.     Additionally, in my capacity with Wells Fargo, I am personally familiar with the extent and nature of Wells Fargo Home Mortgage's business operations within the United States.  Based on my knowledge, I can attest to the fact that Wells Fargo extensively does business in the State of New Jersey and has a number of customer service centers located that jurisdiction.

I declare under penalty of perjury under the laws of the State of Texas that the forgoing is true and correct.

Executed this _29th_ day of January 2013 at San Antonio, Texas

# EXHIBIT "A"

THIS INSTRUMENT PREPARED/DRAFTED BY: WORLD SAVINGS _____

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0046141115

NOTE AMOUNT: $490,000.00

MORRIS COUNTY, NEW JERSEY
JOAN BRAMHALL, COUNTY CLERK
RECORDED 06/27/2007 10:40:53
MTG-OR BOOK 20854 PG 1303
FILE NUMBER 2007058605
RCPT #: 1656531 RECD BY: ann
RECORDING FEES 170.00
MARGINAL NOTATION CD 0.00 ST 0.00

**FOR RECORDER'S USE ONLY**

### MORTGAGE

THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR BIWEEKLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS $612,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I. DEFINITIONS OF WORDS USED IN THIS MORTGAGE
   (A)  Security Instrument. This Mortgage, which is dated June 13, 2007 will be called the "Security Instrument."

   (B)  Borrower. BENJAMIN A ERNST, AN UNMARRIED MAN   sometimes will be called
"Borrower" and sometimes simply "I" or "me."

Received
JUL 0 3 2007
Rosendo Garza

   (C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612

   (D)  Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U S  $490,000.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay the debt in full by July 2, 2037

   (E)  Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

   (F)  Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

   (G)  Person. Any person, organization, governmental authority or other party will be called "Person."

II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY
   I mortgage, irrevocably grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to·



LENDER'S USE ONLY

(15)

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described below.

(i)   The property which is located at **66 GARDEN AVE, CHATHAM, NJ 07928-2258**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property,

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property,

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that  (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

2.   PAYMENTS FOR TAXES AND INSURANCE

    (A)   Borrower's Obligations

        I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

    (B)   Escrow Accounts

        Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for. (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any  These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C  §2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

        The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge  However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds  Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are pledged as additional security for all Sums Secured by this Security Instrument

        If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage  I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

        Upon payment in full of all Sums Secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender  If, under Paragraph 27, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the Sums Secured by this Security Instrument.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender, However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.   **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws, I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.   **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs Lender must give me notice before Lender may take any of these actions Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7 This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.   **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

33.   ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property (i.e., allow any other legal claims against it) and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes

34.   ( X )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan I have stated and confirm that, (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

(D)   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

25.   **FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

26.   **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)     the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

27. **RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

28. **LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**

When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument without charge to me except that I will pay any recordation costs.

29. **STATEMENT OF OBLIGATION**

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

30. **NO CLAIM OF CREDIT FOR TAXES**

I will not make a deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. I will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

31. **WAIVER OF REDEMPTION**

My right of redemption is waived to the extent allowed by Applicable Law.

32. **WAIVER OF HOMESTEAD EXEMPTION**

I waive any and all rights and benefits of homestead exemption in the Property.

**THIS SPACE INTENTIONALLY LEFT BLANK.**

0046141115

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

Signed, sealed and delivered in the presence of:

WITNESS(ES)

_____     _Benjamin A. Ernst_
                                     Borrower(s) acknowledges receipt of a true copy

BORROWER(S):

_Benjamin A. Ernst_(Seal)

BENJAMIN A ERNST

Mailing Address: 66 GARDEN AVE, CHATHAM, NJ  07928-2258

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

STATE of NEW JERSEY
COUNTY of MONMOUTH

On this the 14ᵗʰ day of June, 2007, before me, Keith N. Patruskey, Notary Public, the undersigned officer, personally appeared

Benjamin A. Ernst

known to me (or satisfactorily proven) to be the person whose name(s) are subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

(Seal)

**KEITH NOEL PATRUSKEY**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 4/9/2008**

_____ Notary Public
_____
(Printed Name)

My commission expires: _____



**EXHIBIT "B"**

09-1402

# FORECLOSURE
# CASE INFORMATION STATEMENT
## (FCIS)



Use for initial Chancery Division — General Equity foreclosure pleadings (not motions) under Rule 4:5-1. Pleading will be rejected for filing, under Rule 1:5-6(c), if information is not furnished or if attorney's signature is not affixed.

FOR USE BY CLERK'S OFFICE ONLY

PAYMENT TYPE: ☐ CK ☐ CG ☐

CHG/CK NO:

AMOUNT:

OVERPAYMENT:

BATCH NUMBER:

| CAPTION | COUNTY OF VENUE   Morris |
|---|---|
| Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB v. Benjamin A. Ernst, et al. | NAME OF FILING PARTY (e.g., John Doe, Plaintiff) **Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB** |

| DOCKET NUMBER (When available) | DOCUMENT TYPE |
|---|---|
| F- 31545-09 | ☒ COMPLAINT     ☐ ANSWER |

| ATTORNEY/SELF REPRESENTED NAME | TELEPHONE NUMBER |
|---|---|
| Sarah E. Powers | ( 856 ) 802-1000 |

| FIRM NAME (If applicable) | ADDRESS |
|---|---|
| Powers Kirn, LLC | 728 Marne Highway, Suite 200, Moorestown, NJ  08057 |

**FORECLOSURE CASE TYPE NUMBER**

☐ 088 IN PERSONAM TAX FORECLOSURE

☐ 089 IN REM TAX FORECLOSURE

☒ 0RF RESIDENTIAL MORTGAGE FORECLOSURE

☐ 0CF COMMERCIAL MORTGAGE FORECLOSURE

☐ 0CD CONDOMINIUM OR HOMEOWNER'S ASSOCIATION LIEN  FORECLOSURE

☐ 091 STRICT FORECLOSURE

☐ OPTIONAL FORECLOSURE PROCEDURE (NO SALE)

**DEFENDANT (S) NAMES** (i.e., debtors, mortgagors, subordinate mortgages, judgment creditors et seq.)

Benjamin A. Ernst, his heirs, devisees, and personal representatives and his/her, their, or any of their successors in right, title and interest, Mrs. Ernst, wife of Benjamin A. Ernst, her heirs, devisees, and personal representatives and his/her, their, or any of their successors in right, title and interest, Dorothy J. Valgenti, Joanna Valgenti Ernst, The Dorothy J. Valgenti Trust, The Bridges Financial Group, Inc.,

PROPERTY STREET ADDRESS: 66 Garden Avenue

MUNICIPALITY: Chatham          COUNTY: Morris

MUNICIPAL BLOCK: 32     LOT (S):8

ZIP CODE: 07928

MORTGAGE FORECLOSURE TYPE

☒ RESIDENTIAL     ☐ COMMERCIAL

PURCHASE MONEY MORTGAGE ☒ YES ☐ NO

RELATED PENDING CASE ☐ YES ☒ NO

IF YES, LIST DOCKET NUMBERS:

| ATTORNEY SIGNATURE | PRINT ATTORNEY NAME | DATE |
|---|---|---|
| | Sarah E. Powers | June 11, 2009 |

CN 10169-English, FCIS(Appendix XII-B2) 9/1/2008

FILED

JUN 16 2009

SUPERIOR COURT
CLERK'S OFFICE

#2009-1402

**POWERS KIRN, LLC**
728 Marne Highway, Suite 200
Moorestown, NJ 08057
(856) 802-1000
Attorneys for Plaintiff

---

Wachovia Mortgage, FSB f/k/a World
Savings Bank, FSB

**Plaintiff**

vs.

Benjamin A. Ernst, his heirs, devisees, and
personal representatives and his/her, their, or
any of their successors in right, title and
interest, Mrs. Ernst, wife of Benjamin A.
Ernst, her heirs, devisees, and personal
representatives and his/her, their, or any of
their successors in right, title and interest,
Dorothy J. Valgenti, Joanna Valgenti Ernst,
The Dorothy J. Valgenti Trust, The Bridges
Financial Group, Inc.,

**Defendant(s)**

: SUPERIOR COURT OF NEW JERSEY
: CHANCERY DIVISION
: MORRIS COUNTY
:
: Docket No. F- 31545-09
:
:
: CIVIL ACTION
:
: **COMPLAINT**

Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB  having its principal place of

business in San Antonio, TX, the plaintiff in the above entitled cause, says:

<u>FIRST COUNT</u>

1.      On the date set forth in 1-a following, the obligors named in 1-b following, in the

sum set forth in 1-d following executed to said obligee so named in 1-c following, an obligation

(bond/note) dated the date set forth in 1-a following, to secure the sum set forth in 1-d following,

payable on the date set forth in 1-f following, with interest at the rate per annum set forth in 1-e

following, payable as set forth in 1-g following.

      1-a.    Date: June 13, 2007

      1-b.    Obligors: Benjamin A. Ernst

      1-c.    Obligee: World Savings Bank, FSB

      1-d.    Amount of Obligation:  $490,000.00

      1-e.    Per annum interest rate:7.874%

      1-f.    Due date of Obligation: July 2, 2037

      1-g.    Manner of payment of Obligation:  By the payment of the sum of $847.12

bi-weekly, which amount may include escrow if required.

      1-h.    Bi-weekly late charge: $42.36

      1-i.    Terms of the mortgage permit the principal balance of the obligation to be

increased to  125% of the original obligation.

      1-j.    Default Date (Date Payment Due): August 25, 2008

2.    To secure the payment of the aforesaid obligation, the parties named in paragraph

1-b above together with the parties named in 2-e below, if any additional mortgagors, executed to

the obligee named in paragraph 2-d, a mortgage of even date with said obligation, and thereby

conveyed to obligee named in 2-d in fee the land hereinafter described, on the express condition

that such conveyance should be void if payment should be made at the time and times, and in the

manner described in said obligation.  Said mortgage was duly recorded on the date set forth in 2-

a following, in the County Office set forth in 2-b following, and in the County Mortgage Book

set forth in 2-c following:

      2-a.    Date mortgage was recorded: June 27, 2007

      2-b.    County Office where mortgage was recorded:  Clerk of Morris County

      2-c.    Mortgage Book  20854  Page 1303&c

      2-d.     World Savings Bank, FSB

      2-e.    Benjamin A. Ernst

3.    The mortgaged premises are described as follows:  ALL THAT certain land and

premises situated in the Borough of Chatham, County of Morris, State of New Jersey, and more

particularly described as follows:

ALL THAT CERTAIN lot or parcel of land with the buildings and improvements thereon erected SITUATE, lying and being in the Borough of Chatham, County of Morris and State of New Jersey:

BEGINNING at an iron pipe found in the southeasterly sideline of Garden Avenue distant 252.40 feet along said sideline from the intersection of the same with the southwesterly sideline of Weston Avenue as shown on said Map and running, thence;

1. South 46 degrees 18 minutes East 139.82 feet, thence;

2. South 43 degrees 42 minutes West 60.80 feet, thence;

3. North 46 degrees 18 minutes West 139.82 feet to the southeasterly sideline of Garden Avenue, thence;

4. along said sideline, North 43 degrees 42 minutes East 60.80 feet to the point and place of BEGINNING.

BEING also known and designated as Lot 8 as shown on a certain map entitled, "CHATHAM ACRES, BOROUGH OF CHATHAM, MORRIS COUNTY, N.J., PROPERTY OF GEORGE G. HENNESSY, DATED NOVEMBER 30, 1950", filed in the Morris County Clerk's Office on December 6, 1950 as Map No. 1248.

The above description was prepared by Eric P. Silvestro, Professional Land Surveyor, License No. GS 43242, in accordance with his survey dated May 22, 2007.

BEING known as Block 32, Lot 8, Tax Map

. BEING more commonly known as 66 Garden Avenue, Chatham, NJ  07928

BEING further the same land and premises which Robert J. Schoen and Jeannette M. Schoen, his wife, by a Deed dated 07/12/1961 and recorded 07/17/1961 in Deed Book 1806, page 627 did grant and convey unto Jane A. Triolo and Dorothy F. Triolo, their heirs and assigns.

AND BEING the same premises which Dorothy F. Triolo, single, by Deed dated 8/2/1994 and recorded 8/4/1997 in the County of Morris in Deed Book 4611, page 62 conveyed unto Jane A. Triolo, single.

BEING COMMONLY KNOWN AS: 66 Garden Avenue, Chatham,  New Jersey

Block 32    Lot 8   Tax map of the Borough of Chatham

4.    The holder of the obligation and mortgage referred to in paragraphs 1 and 2 above assigned said obligation and mortgage as follows:

4-a.    World Savings Bank, FSB merged with and became Wachovia Mortgage, FSB.

5.    The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and insurance premiums should remain unpaid for 30 days after the same shall fall due, the whole principal sum, with all unpaid interest, should at the option of the above named mortgagee or heirs, executors, administrators, representatives or assigns, become immediately due and payable.

6.    The following instruments appear of record which affect or may affect the premises described in paragraph 3 above, all of which instruments are subordinate to the lien of the mortgage set forth in paragraph 2 above.

6-a.    Benjamin A. Ernst executed the Mortgage as an unmarried person. The Present marital status of Benjamin A. Ernst cannot be ascertained and defendant Mrs. Ernst, wife of Benjamin A. Ernst, the unknown spouse of Benjamin A. Ernst, is hereby named for any interest this person may hold in the property. The subject mortgage is a purchase money mortgage. Any interest or possessory right of Mrs. Ernst, wife of Benjamin A. Ernst has in such property is subordinate and subject to the aforesaid purchase money mortgage.

6-b.    Benjamin A. Ernst conveyed a Life Estate on the within premises subject to plaintiff's bond and mortgage to Dorothy J. Valgenti by deed recorded 09/14/2007 in Deed Book 20917 at page 1878&c.

6-c.     Benjamin A. Ernst conveyed a Life Estate on the within premises subject to plaintiff's bond and mortgage to Joanna Valgenti Ernst by deed recorded 09/14/2007 in Deed Book 20917 at page 1878&c.

6-d.     Benjamin A. Ernst conveyed a Life Estate on the within premises subject to plaintiff's bond and mortgage to The Dorothy J. Valgenti Trust by deed recorded 09/14/2007 in Deed Book 20917 at page 1878&c.

6-e.     The Bridges Financial Group, Inc.   is a defendant because it holds a mortgage on the within premises for $300,000.00 made by Dorothy J. Valgenti and Joanna Valgenti Ernst and The Dorothy J. Valgenti Trust, recorded in the office of the Clerk of Morris County on 05/23/2008 at Mortgage Book 21089 Page 945&c.

7.     Pursuant to the terms of the obligation referred to in paragraph 1 above (the terms of which are incorporated in the mortgage referred to in paragraph 2 above), the obligee named in said obligation reserved the right to pay taxes or other liens affecting the premises herein described, which liens are affecting the premises herein described, which liens are superior to the lien of the mortgage referred to in paragraph 2 above and which liens, when paid by the obligee or assignee, together with interest thereon as provided in said obligation and mortgage, are to be added to the amount due on the obligation and mortgage.  The obligee may be required to pay such liens during the pendency of this action and will demand that such payments so made by said obligee or assignee be added to the mortgage debt as aforesaid.

8.     The person or persons named in paragraph 1-b above, or the grantee or grantees, if any, of said person or persons, have defaulted in making the payments to the plaintiff herein as required by the terms of the obligation and mortgage referred to in paragraphs 1 and 2 above, and said payments have remained unpaid for more than 30 days from the date of said payments due,

and are still unpaid. Plaintiff, herein, by reason of said default elected that the whole unpaid principal sum due on the aforesaid obligation and mortgage referred to in paragraphs 1 and 2 above with all unpaid interest and advances made thereon shall now be due.

9.      The mortgage set forth herein held by plaintiff is a purchase money mortgage.

10.     The heirs, devisees and personal representatives of the owners of the premises herein and their or any of their successors in right, title and interest are made party defendants to this action by reason of the fact that the whereabouts of the mortgagors cannot be ascertained at this time and those heirs, devisees and personal representatives and their or any of their successors in right, title and interest are made party defendants to this action to foreclose any interest they may have in the property being foreclosed herein.

11.     Any interest or lien on the premises described in paragraph 3 above which the mortgagors named in paragraph 2 above or the grantees of said mortgagors, or which subsequent encumbrancers or lien holders, if any, named in paragraph 6 above, who are the defendants herein have or claim to have in or upon the aforesaid mortgaged premises or some part thereof are subject and subordinate to the lien of the mortgage set forth in paragraph 2 above, which mortgage is held by the plaintiff herein.

12.     Plaintiff has complied with the provisions of R.S. §2A:50-53 et seq.


WHEREFORE, the plaintiff demands judgment:

(a)     Fixing the amount due on the mortgage referred to in paragraph 2 above;

(b)     Barring and foreclosing the defendants and each of them of all equity of redemption in and to the aforesaid lands, except to the extent of the priority given to Condominium liens, if any, by virtue of N.J.S.A. 46:8B-21;

(c)      Directing that plaintiff be paid the amount due to plaintiff as provided in the mortgage set forth in paragraph 2 above, together with interest and costs;

(d)      Adjudging that the lands described in paragraph 3 above be sold according to law to satisfy the amount due to plaintiff on the mortgage set forth in paragraph 2 above;

(e)      Appointing a receiver of the rents, issues and profits of the lands described in Paragraph 3 above.

SECOND COUNT

1.      By the terms of the obligation and mortgage referred to in paragraph 1 and 2 of the First Count of this Complaint, the plaintiff, its assignee or the purchaser at sheriff's sale herein is entitled to possession of the tract of land with the appurtenances as more particularly described in paragraph 3 of the First Count herein.

2.      On the date set forth in 2-a following, the plaintiff, by the terms of the obligation and mortgage aforesaid, became entitled to possession of the premises described in paragraph 3 of the First Count of this Complaint.

2-a.    Date: September 25, 2008.

3.      The person or persons named in paragraph 1-b, or their grantee or grantees, and those holding under them, and paragraph 6 of the First Count of the Complaint have or may claim to have certain rights in the premises described in paragraph 3 of the First Count of this Complaint and by reason thereof have since the date set forth in paragraph 2-a above deprived the plaintiff herein of the possession of the premises aforesaid.

WHEREFORE, the plaintiff demands judgment against the defendants:

(a)     For possession of said premises

(b)     For damages for mesne profits;

(c)     For costs;

## CERTIFICATION PER RULE 4:64-1(a)

The undersigned hereby certifies that a title search has been received and reviewed to identify lienholders and other entities with an interest in the property.

## CERTIFICATION PER RULE 4:5-1

The undersigned hereby certifies that this matter is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is there any other action or arbitration proceeding contemplated.

POWERS KIRN, LLC
Attorneys for Plaintiff

By:
Sarah E. Powers

DATED: June 11, 2009

*Order*
*021910*

FILED

FEB 1 9 2010

SUPERIOR COURT
CLERK'S OFFICE

2009-1402

**POWERS KIRN, LLC**
728 Marne Highway, Suite 200
Moorestown, NJ 08057
(856) 802-1000
Attorneys for Plaintiff

_____

Wells Fargo Bank, N.A.

           **Plaintiff**

    vs.

Benjamin A. Ernst, et al.

           **Defendant(s)**

    : SUPERIOR COURT OF NEW JERSEY
    : CHANCERY DIVISION
    : MORRIS COUNTY
    :
    : Docket No.F-31545-09
    :
    :      CIVIL ACTION
    :
    :   **ORDER SUBSTITUTING**
    :       **PLAINTIFF**

      IT IS on this *19* day of *Febr* , 20 *10* ORDERED that Wells Fargo

Bank, N.A. be and is hereby substituted as the named plaintiff in the above entitled matter and

all pleadings heretofore filed shall be deemed to contain Wells Fargo Bank, N.A., as the named

plaintiff therein.

      FOR THE COURT

_____
Maria Marinari Sypek, P.J.Ch.

Respectfully recommended
R. 1:34-6 OFFICE OF FORECLOSURE